Case 4:21-cv-04256   Document 14   Filed on 09/30/22 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
October 01, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, §§§§§<br><br>Petitioner, §§<br>VS. §§ CIVIL ACTION NO. 4:21-CV-4256<br>§§<br>JOHN MICHAEL PALOMBO, §§§§<br><br>Respondent. § | |

## MEMORANDUM OPINION AND ORDER

This is a proceeding to confirm an arbitration award. Before the Court are an application to confirm the award filed by Petitioner Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") and a motion to vacate the award filed by Respondent John Michael Palombo ("Palombo"). Merrill Lynch's application (Dkt. 1) is **GRANTED**. Palombo's motion (Dkt. 6) is **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

Palombo began working at Merrill Lynch as a financial advisor in 2008, and his wife, Susan,[1] began working on his team as a financial advisor in 2015. After Palombo had worked for Merrill Lynch for ten years, he became eligible for retirement and entered

---

[1] Susan Palombo is not a party. To avoid confusion, the Court will refer to her by her first name.

Merrill Lynch's sunset program, which Merrill Lynch calls the Client Transition Program ("CTP"). Under the CTP, Merrill Lynch essentially pays retiring financial advisors (whom Merrill Lynch calls "transitioning FAs") to help Merrill Lynch keep the retiring advisors' clients by convincing the clients to work with other Merrill Lynch financial advisors (called "receiving FAs"). In the parlance of the CTP program, when Palombo became a transitioning FA, Susan became his receiving FA. Generally, transitioning FAs take on a "Senior Consultant" title and help receiving FAs maintain client relationships for a contractual term of two to four years.

As part of the CTP, Palombo signed a contract in October of 2018 whereby he would serve as a "CTP Senior Consultant" with Merrill Lynch for two years, beginning on December 1, 2018. For those two years, Palombo would receive a salary, as well as separate non-salary payments that were calculated in part based on the assets that remained at Merrill Lynch. The CTP contract included a comprehensive release of nearly any legal claim that accrued before December 1, 2018. The CTP contract also contained non-compete provisions barring Palombo from participating in any securities business or soliciting former clients for a three-year period beginning with his departure from Merrill Lynch. The CTP contract further provided that "any breach" of the contract would result in "immediate termination of payments" under the contract and would require Palombo "to immediately repay any non-salary amounts" that he had received under the CTP program.

In April of 2020, Palombo initiated a Financial Industry Regulatory Authority ("FINRA") arbitration against Merrill Lynch. In his statement of claim, he pled four somewhat disparate counts. The first two counts, discrimination on the basis of age and

disability (Count I) and retaliation and hostile work environment (Count II), stemmed from alleged discriminatory conduct on the part of Merrill Lynch, such as the refusal of management in Merrill Lynch's high-rise to accommodate Palombo's arthritis and other orthopedic ailments by allowing Palombo to ride his Segway on the main elevators. The last two counts, fraud in the inducement (Count III) and breach of contract (Count IV), stemmed from alleged misrepresentations made by Merrill Lynch to Palombo regarding the CTP contract. Palombo sought $2 million in compensatory damages, $5 million in punitive damages, and nullification of the CTP contract.

Palombo continued to work at Merrill Lynch during the arbitration proceeding. He finished his two-year contractual term under the CTP contract and resigned on November 30, 2020. Susan resigned with him, and both Palombo and Susan immediately began working for a competing financial firm.

In December of 2020, the arbitration panel dismissed, on Merrill Lynch's motion, all of Palombo's claims that accrued before December 1, 2018 based on the release provisions in the CTP contract. In February of 2021, Merrill Lynch countersued Palombo for breach of contract, alleging that Palombo had breached the CTP contract by going to work for a competing financial firm during the three-year non-compete period.

The arbitration panel held its final hearing from November 30, 2021 to December 2, 2021. The panel unanimously denied Palombo's claims in their entirety and found for Merrill Lynch on Merrill Lynch's counterclaims for breach of the CTP contract. The panel ordered Palombo to pay Merrill Lynch nearly $600,000 in non-salary compensation, nearly $700,000 for lost profits, and over $115,000 in attorney's fees.

## LEGAL STANDARD

The Federal Arbitration Act ("the FAA") reflects a national policy favoring arbitration. *Cooper v. WestEnd Capital Mgmt., L.L.C.,* 832 F.3d 534, 543–44 (5th Cir. 2016) (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008)). "In light of the strong federal policy favoring arbitration, judicial review of an arbitration award is extraordinarily narrow." *Cooper*, 832 F.3d at 543-44 (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471–72 (5th Cir. 2012)). A district court's review of an arbitration decision is "exceedingly deferential." *Rain CII Carbon, LLC*, 674 F.3d at 472 (citation and internal quotation marks omitted). "An award may not be set aside for a mere mistake of fact or law." *Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007); *see also Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 671 (2010) ("It is not enough for petitioners to show that the panel committed an error—or even a serious error.").

Section 10 of the FAA provides the exclusive grounds for vacatur of an arbitration award. *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009). An award may be vacated: (1) "where the award was procured by corruption, fraud, or undue means;" (2) "where there was evident partiality or corruption in the arbitrators[;]" (3) "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted

was not made." 9 U.S.C. § 10(a). The burden of proof is on the party seeking to vacate the award. *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 385 & n.9 (5th Cir. 2004). Any doubts or uncertainties must be resolved in favor of upholding the award. *Id*.

## ANALYSIS

Palombo raises four grounds for vacating the arbitration panel's award. He contends that: (1) the arbitrators committed misconduct by refusing to hear evidence supporting Palombo's claim of fraudulent inducement; (2) the arbitrators committed misconduct and exceeded their powers by refusing to postpone the final hearing; (3) the arbitrators exceeded their authority by ordering Palombo to pay Merrill Lynch for breach of the CTP contract; and (4) the arbitration award was procured through fraudulent misrepresentations made by counsel for Merrill Lynch.

### i. *Evidence regarding fraudulent inducement*

Palombo first contends that the arbitration panel violated 9 U.S.C. § 10(a)(3) by "refusing to hear literally any evidence in support of [Palombo's] claims for fraudulent inducement." The Court disagrees with Palombo.

The record reflects that Merrill Lynch filed a motion to dismiss all claims covered by the release provisions of the CTP contract. Palombo, in response, argued that the CTP was unenforceable on grounds of fraudulent inducement or mutual mistake. According to Palombo, Merrill Lynch had induced him into signing the CTP contract by making false statements about the CTP contract's payout terms for his wife (who was his receiving FA) and about whether he could still give investment advice as a CTP Senior Consultant. Merrill Lynch replied that contract formation cannot be challenged by a party to the

contract who, after learning of the alleged mistake or fraud, has ratified the agreement through his or her conduct.

The arbitration panel held a hearing on Merrill Lynch's motion. At the hearing and in its papers, Merrill Lynch pointed out that, in a filing entitled "Claimant's Response to Respondent's Answer," Palombo stated that he learned about the discrepancy between Susan's expected payout and actual payout in December of 2018 and that he was told that he could not provide investment advice in December of 2019. Merrill Lynch further noted that Palombo never raised the issues with Merrill Lynch and continued to work in the CTP Senior Consultant role (and to get paid under the CTP contract) until his contractual term expired on November 30, 2020. The arbitration panel unanimously granted Merrill Lynch's motion to dismiss, stating in its order that the CTP contract's release provisions were enforceable because "[Palombo's] actions constituted ratification of the CTP agreement and its provisions." Accordingly, the CTP contract's release provisions barred any claims that accrued before December 1, 2018.

Palombo's argument, though couched in terms of a refusal to hear evidence pertinent to the controversy, is actually an attack on the arbitration panel's legal conclusion that Palombo had pled some of his claims out of the proceeding. When the arbitration panel concluded, based on Palombo's own admissions, that Palombo had ratified the CTP contract by accepting benefits under it despite knowledge of Merrill Lynch's alleged misrepresentations, evidence indicating that Merrill Lynch had fraudulently induced Palombo to sign the CTP contract became irrelevant. Though the Court sees no flaw in the arbitration panel's legal reasoning on this point, "a court may not decline to enforce an

award simply because it disagrees with the arbitrator's legal reasoning" anyway. *Reed v. Florida Metropolitan University, Inc.*, 681 F.3d 630, 637 (5th Cir. 2012).

### ii. *Refusal to postpone the final hearing*

Palombo next contends that the arbitration panel violated 9 U.S.C. § 10(a)(3) by refusing to postpone their final hearing. In a similar vein, Palombo also contends that the arbitration panel's alleged refusal to postpone the final hearing violated 9 U.S.C. § 10(a)(4) because it exceeded the panel's authority. The Court does not find either contention persuasive.

—9 U.S.C. § 10(a)(3)

To succeed in vacating an arbitration award based on the panel's refusal to postpone a hearing in violation of 9 U.S.C. § 10(a)(3), the movant must establish that there was no reasonable basis for the panel's refusal to postpone the hearing and that the movant suffered prejudice because of that refusal. *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 400 (5th Cir. 2006). Here, Palombo has not met that burden.

The record, first of all, is devoid of any sign that Palombo suffered prejudice from the timing of the final hearing. At the time of the final hearing, the arbitration proceeding had been pending for 20 months. Palombo's lead counsel, who had been Palombo's lawyer for the entire pendency of the arbitration, represented him at the final hearing, along with another lawyer. Palombo argues that he was "materially prejudiced" by the panel's refusal to postpone because his lead attorney had to resolve a scheduling conflict, only had three weeks to get ready, and "was denied several additional weeks of preparation[.]" However, Palombo does not "explain[] why more preparation time might have led to a different

result." *Sungard Energy Systems Inc. v. Gas Transmission Northwest Corp.*, 551 F. Supp. 2d 608, 614 (S.D. Tex. 2008). Given the age of the case and his attorney's having represented him since the case's outset, Palombo does not explain how he was even at a disadvantage under the circumstances, and even "mere disadvantage, without more, does not equate to prejudice." *Id*.

Moreover, the Court cannot say that the panel lacked any reasonable basis for denying Palombo's request for a postponement. The panel had already granted Palombo's first request for a continuance, and it tried to accommodate his second by twice requesting alternate dates from the parties. The panel originally set the hearing to begin on October 4, 2021. On July 30, 2021, nearly ten weeks before the hearing date, Palombo requested a continuance to review "roughly 5,000 pages" of documents that it claimed had just been produced by Merrill Lynch. On August 16, 2021, the panel granted Palombo's request and specified a six-week period during which the hearing would be reset:

> ***It is the panel's intention that the hearing be conducted between November 8 and December 17, 2021. A scheduling poll shall be established for this purpose. If the parties are unable to agree on 4 consecutive dates within that period by September 15, 2021, the panel shall set hearing dates within the above identified timeframe.***

In a filing submitted a month later, Palombo's counsel indicated that they were unavailable for the entire six-week window because they had other arbitration settings. The panel set the final hearing for November 30 through December 3 of 2021. On September 22, 2021, Palombo asked the panel to reconsider the hearing dates, and on the same day the panel ordered the parties to provide alternate dates:

> ***The parties are ordered to provide alternate dates certain for conducting a hearing no later than February 1, 2022. If no alternate dates are agreed and provided to the panel by October 10, 2021, the hearing will proceed on November 30 as ordered.***

The parties jointly provided two possible sets of dates in January and February of 2022, but the panel was unavailable on those dates. The panel instructed the parties again to propose additional dates, and in response to that request the parties jointly provided four sets of dates in January, February, and March of 2022.

Palombo tried to secure a postponement by initiating other legal proceedings. He filed a *vacatur* action in Texas state court in which he asked the Texas state court to vacate the arbitration panel's order granting Merrill Lynch's motion to dismiss, then used the pending *vacatur* action as a basis for requesting another continuance from the arbitration panel. The panel denied the motion and stated that "[t]he hearing [would] proceed as scheduled November 30 to December 3, 2021." Palombo also petitioned the Director of Dispute Resolution for FINRA to compel the panel to postpone the final hearing. The FINRA Director denied the petition.

On November 5, 2021, 25 days before the final hearing, Palombo's counsel confirmed that they would be able to attend after all, and the hearing began as scheduled on November 30.

The record shows that the arbitration panel moved the final hearing when Palombo claimed that ten weeks was not enough time to review the 5,000 pages of documents produced by Merrill Lynch; gave Palombo a six-week window within which to find suitable new hearing dates; and then, after Palombo waited a month to tell the panel that

9 / 16

he could not attend the hearing at any point during that six-week period, tried to accommodate Palombo's second request for a postponement by twice requesting additional dates for the hearing. Notably, Palombo's lead counsel, after trying to force a postponement by filing a *vacatur* action in Texas state court and a petition with FINRA's Director of Dispute Resolution, informed the panel 25 days before the hearing that she would be able to attend anyway. The arbitration panel did not act unreasonably in concluding that granting Palombo's request for a second postponement would have needlessly resulted in a delay of at least several months in a proceeding that was already 20 months old when the final hearing was held in November of 2021. The arbitration panel could reasonably have decided to deny Palombo's requested continuance to help ensure that the arbitration served its intended purpose as "a speedy and informal alternative to litigation." *Id*. at 612–13 (refusing to vacate an arbitration award when one party's lead counsel could not attend the final arbitration hearing because the panel had denied a motion for continuance filed a month before the hearing in which the lead counsel stated that he had a scheduling conflict) ("The panel also stated that delaying the proceedings until Smith was available would also likely result in a substantial delay[.] ¡Arbitration is intended to serve as a speedy and informal alternative to litigation. Thus, the panel might have decided—reasonably—to deny Sungard's requested continuance to ensure that arbitration served its intended purposes.") (citation, quotation marks, and brackets omitted).

—9 U.S.C. § 10(a)(4)

Palombo also contends that the arbitration panel's alleged refusal to postpone the final hearing violated 9 U.S.C. § 10(a)(4) because it exceeded the panel's authority.

Palombo argues that the panel exceeded its authority "by failing to postpone the hearing upon the parties' agreement[,]" in violation of Rule 13601(a)(1) of the FINRA Code. The Court disagrees.

The record contains no evidence of an agreement between Merrill Lynch and Palombo to postpone the hearing. Palombo bases his argument that such an agreement existed on this line from a brief filed by Merrill Lynch opposing Palombo's request for a continuance based on his state-court *vacatur* action:

> For the reasons stated herein, Respondent respectfully requests that the Panel deny Claimant's Motion to Continue and set the final hearing in January or February of 2022.

However, the paragraph immediately above the quoted language makes clear that Merrill Lynch wrote the brief after the parties provided the arbitration panel, at the panel's request, with hearing dates in January or February of 2022 but before the panel definitively indicated that it was moving forward with the November 30, 2021 date:

> The parties have supplied the Panel with their availability for a final hearing in January or February of 2022, which is almost two years after the initiation of this arbitration. The Panel should set the hearing in that time frame and refuse to indulge any more frivolous arguments on the topic of scheduling. Merrill is entitled to litigate its disputes with Claimant and collect the more than $595,000 of Merrill's money that Claimant is improperly withholding.

The brief also makes clear that Merrill Lynch opposed what it described as Palombo's request for an "indefinite" postponement:

> Claimant's stated reason for his new request for an *indefinite* continuance is that he has filed a "Motion to Vacate" in Travis County, Texas, seeking to vacate this Panel's dismissal order.

Merrill Lynch's other communications also cut against Palombo's argument that there was an agreement between the parties to postpone the final hearing from its November 30, 2021 setting. In a letter to the FINRA Director of Dispute Resolution opposing Palombo's petition to compel the panel to vacate the November 30 setting, Merrill Lynch stated that, though it had cooperated with the panel's request for alternate hearing dates in January and February of 2022, it was ready to proceed on November 30:

> Should the Director believe any action is appropriate with regard to Claimant's appeal, the Director should – at the very most – ask the Panel about their availability for the dates the parties have offered in January and February of 2022, and if any four dates in that time frame are available, re-set the hearing on those dates.[6] Otherwise, the case should remain on the calendar for a November 30- December 3, 2021 hearing.

There is no evidence in the record of an agreement between Merrill Lynch and Palombo to postpone the final hearing. To the contrary, Merrill Lynch explicitly indicated that it was ready to proceed on November 30, 2021 in a letter opposing Palombo's petition to have the November 30 date cancelled. And to the extent that there is even any uncertainty about the existence of an agreement to postpone the hearing, that uncertainty must be resolved in Merrill Lynch's favor. *Cooper*, 832 F.3d at 544 ("The burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it."). Moreover, to the extent that the panel determined that Rule 13601(a)(1)

of the FINRA Code did not require a postponement of the final hearing, that determination falls outside of the scope of 9 U.S.C. § 10(a)(4). *Walker v. Ameriprise Financial Services, Inc.*, 787 Fed. App'x 211, 214 (5th Cir. 2019) ("Walker's challenge rests on his assertion that the 2017 panel erred in determining that the elements of [FINRA] Rule 13504(a)(6) were met. . . . Walker does not argue that the panel violated any express provisions of the arbitration agreement, but only that it incorrectly applied Rule 13504. Even if that were true, however, such alleged legal errors lie far outside the category of conduct embraced by § 10(a)(4).") (quotation marks and brackets omitted).

      *iii.*    *Ordering Palombo to pay Merrill Lynch for breach of the CTP contract*

Palombo next contends that the arbitration panel exceeded its authority and violated 9 U.S.C. § 10(a)(4) when it ordered Palombo to pay Merrill Lynch his non-salary compensation and attorney's fees. Palombo argues that, by ordering Palombo to pay his non-salary compensation back to Merrill Lynch, the arbitration panel "creat[ed] a *de facto* rescission" of the CTP contract. Since the panel awarded Merrill Lynch this rescissory relief, the argument continues, the panel could not also enforce the release provisions of the contract against Palombo (which was the basis on which the panel dismissed many of Palombo's claims) and force Palombo to pay attorney's fees under Section 38.001 of the Texas Civil Practice and Remedies Code, "which requires an enforceable contract[.]"

The Court disagrees with Palombo's contention. The arbitration panel's award of relief based on the CTP contract is not reviewable under 9 U.S.C. § 10(a)(4) if the panel at least arguably interpreted the CTP contract. *BNSF Railway Co. v. Alstom Transportation,*

*Inc.*, 777 F.3d 785, 788 (5th Cir. 2015) ("When an arbitration goes an opponent's way on the basis of questionable contract interpretation, parties often seek refuge in § 10(a)(4). But the Supreme Court has made clear that district courts 'review of arbitrators' awards under § 10(a)(4) is limited to the 'sole question . . . [of] whether the arbitrator (even arguably) interpreted the parties 'contract.'"). Here, the panel not only interpreted the CTP contract but interpreted it correctly. The CTP contract explicitly provided that "any breach" of the contract would result in "immediate termination of payments" under the contract and require Palombo "to immediately repay any non-salary amounts" that he had received under the CTP program. Palombo breached the non-compete provisions of the contract by immediately going to work at a competing financial firm after leaving Merrill Lynch. The panel's award was entirely consistent with both a finding that the CTP contract was enforceable and the express language of the CTP contract.

      iv.    *Alleged fraud*

Finally, Palombo contends that the arbitration award must be vacated under 9 U.S.C. § 10(a)(1) because it was procured by fraud. Palombo accuses counsel for Merrill Lynch of "materially misrepresent[ing] the status of evidence and admissions by the parties." The sole alleged misrepresentation to which Palombo refers is Merrill Lynch's description of certain statements in Palombo's pleadings as undisputed facts. Palombo states that Merrill Lynch made this alleged misrepresentation in its briefing and at the hearing on its motion to dismiss. Specifically, Merrill Lynch pointed out that, in a filing entitled "Claimant's Response to Respondent's Answer," Palombo stated that he learned about the discrepancy between Susan's expected payout and actual payout in December of 2018 and that he was

told that he could not provide investment advice in December of 2019. The arbitration panel relied in part on those facts to reach its conclusion that Palombo had ratified the CTP contract.

The Court disagrees with Palombo. "Under Section 10(a)(1) of the FAA, a party who alleges that an arbitration award was procured by fraud must demonstrate: (1) that the fraud occurred by clear and convincing evidence; (2) that the fraud was not discoverable by due diligence before or during the arbitration hearing; and (3) the fraud materially related to an issue in the arbitration." *Morgan Keegan & Co., Inc. v. Garrett*, 495 Fed. App'x 443, 447 (5th Cir. 2012) (quotation marks omitted). Leaving the first and third prongs aside, here, the alleged fraud was certainly discoverable by Palombo's due diligence before or during the arbitration hearing, as it relates entirely to statements made by Merrill Lynch in briefing and at a motion hearing about Palombo's own pleadings. For that reason alone, Palombo's argument must fail. *See Karaha Bodas Co., L.L.C. v. Perushan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 307 (5th Cir. 2004) ("Courts . . . have held that an arbitration award is not fraudulently obtained when the protesting party had an opportunity to rebut his opponent's claims at the hearing."). Furthermore, describing a statement made in an opponent's pleadings as an undisputed fact is not "fraud" to begin with. In fact, "[n]ormally, factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding on the party who made them." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).

## CONCLUSION

Because Palombo has failed to sustain his burden in establishing grounds for vacating the arbitration panel's award, his motion to vacate that award (Dkt. 6) is **DENIED,** and Merrill Lynch's application to confirm the award (Dkt. 1) is **GRANTED**. The FINRA Panel's arbitration award in case number 20-01175 dated December 16, 2021 is **CONFIRMED** pursuant to Section 9 of the FAA.

All other motions are denied as moot. The Court will issue a final judgment simultaneously with this opinion.

SIGNED at Houston, Texas, on September 30, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE